1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10   JACK LAGRASSA dba CERTIFIED        No.  11-CV-2730-JAM-EFB
     ELECTRIC and RESIDENCE MUTUAL
11   INSURANCE COMPANY,

12             Plaintiffs,            **ORDER GRANTING PLAINTIFFS'**
                                      **MOTION FOR PARTIAL SUMMARY**
13        v.                          **JUDGMENT AND DENYING DEFENDANT'S**
                                      **MOTION FOR PARTIAL SUMMARY**
14   THE BURLINGTON INSURANCE         **JUDGMENT**
     COMPANY, and DOES 1-100,
15   inclusive,

16             Defendants.

17

18

19        This matter comes before the Court on the parties' Cross-

20   Motions for Partial Summary Judgment on the issue of Defendant's

21   alleged duty to defend pursuant to Federal Rule of Civil

22   Procedure 56.  Both motions are opposed.[1]  For the reasons set

23   forth below, Plaintiffs' Motion for Partial Summary Judgment is

24   GRANTED and Defendant's Motion for Partial Summary Judgment is

25   DENIED.

26

27   _____
     [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for October 3, 2012.

                                    1

1                     I.    FACTUAL BACKGROUND

2        Almost all of the facts in this case are undisputed.  On or

3   around December 7, 2005, a fire broke out at Calvin Yee's

4   residence in Elk Grove, California, which caused damage to some

5   of the home and its contents.  At the time of the fire, Mr. Yee

6   had a homeowner's insurance policy with Plaintiff Residence

7   Mutual Insurance Company ("RMIC").

8        Following the fire, there was speculation that it was caused

9   by an alarm panel in the Yee home.  At the direction of RMIC,

10  independent adjuster George Pandelidis retained Plaintiff Jack

11  LaGrassa ("LaGrassa"), the owner and sole employee of Certified

12  Electric, to remove and keep the alarm panel from the Yee home,

13  and LaGrassa did so sometime in March 2006.  During this time,

14  LaGrassa had a General Liability insurance policy with Defendant

15  Burlington Insurance Company ("Defendant").

16       LaGrassa kept the alarm panel for almost one year at his

17  home, until sometime in March 2007, he disposed of the alarm

18  panel by placing it in the garbage.  The parties disagree about

19  what prompted LaGrassa to get rid of the panel.  Plaintiffs

20  LaGrassa and RMIC (collectively "Plaintiffs") have presented

21  evidence, through LaGrassa's testimony, that Mr. Pendelidis

22  authorized the disposal of the panel.  Defendant disputes this;

23  Mr. Pendelidis testified he cannot remember whether or not he

24  gave LaGrassa permission to dispose of the panel, and an adjuster

25  at RMIC testified that Mr. Pendelidis did not authorize the

26  disposal of the panel.

27       Nevertheless, RMIC subsequently requested the alarm panel

28  from LaGrassa, having learned of its disposal sometime in June

                                  2

1   2007.  Almost two years later, in June 2009, RMIC initiated an

2   action against LaGrassa in Sacramento Superior Court for his

3   failure to retain the alarm panel.

4        A.   Tender History

5        LaGrassa was served with the underlying lawsuit in early

6   September 2009.  He immediately contacted his insurance company,

7   Defendant, and an agent of Defendant informed LaGrassa that his

8   claim was not covered.

9        LaGrassa subsequently retained an attorney, who sent a

10  letter tendering the defense of the underlying litigation to

11  Defendant.  On September 30, 2009, Defendant acknowledged receipt

12  of LaGrassa's letter and denied coverage for the issue presented

13  by the action initiated by RMIC.

14       Counsel for LaGrassa repeatedly contacted Defendant, seeking

15  reconsideration of the coverage determination.  Following a

16  series of letters between LaGrassa's attorney and Defendant, it

17  was clear by January 12, 2010, that Defendant was not going to

18  change its position regarding coverage.  LaGrassa could not

19  afford to pay for his defense in the underlying litigation, and

20  as a result, he stipulated to the entry of judgment against him.

21       B.   Insurance Policy Terms

22       Defendant issued LaGrassa four policies of insurance between

23  2004 and 2008, and during the relevant time period, LaGrassa's

24  insurance policy with Defendant contained the following terms:

25  **SECTION I – COVERAGES**

26  COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

27       1.  Insuring Agreement

28

1          a.   We will pay those sums that the insured becomes
2    legally obligated to pay as damages because of "bodily injury" or
     "property damage" to which this insurance applies . . . we will
3    have no duty to defend the insured against any "suit" seeking
     damages for "bodily injury" or "property damage" to which this
4    insurance does not apply. . . .

5          b.    This insurance applies to "bodily injury" and
     "property damage" only if:
6

7          (1)  The "bodily injury" or "property damage" is
     caused by an "occurrence" that takes place in the "coverage
8    territory"; . . .

9    **SECTION V – DEFINITIONS**

10      13.  "Occurrence" means an accident, including continuous or
     repeated exposure to substantially the same general harmful
11   conditions. . . .

12      17.  "Property damage" means:
13

14         a.  Physical injury to tangible property, including all
     resulting loss of use of that property.  All such loss of use
     shall be deemed to occur at the time of the physical injury that
15   caused it; of

16         b.  Loss of use of tangible property that is not
17   physically injured.  All such loss of use shall be deemed to
     occur at the time of the "occurrence" that caused it.
18

19      The policy also contains the following exclusions within

20   "Section I – Coverages, Coverage A Bodily Injury and Property

21   Damage Liability":

22      a.   Expected Or Intended Injury
             "Bodily injury" or "property damage" expected or
23           intended from the standpoint of the insured.

24      j.   Damage to Property
             "Property damage" to:
25

26           (4)  Personal property in the care, custody or control
             of the insured;
27      m.   Damage to Impaired Property Or Property Not Physically
             Injured
28

                              4

"Property damage" to . . . property that has not been physically injured, arising out of: . . .

(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

## II.   PROCEDURAL HISTORY

Plaintiffs originally filed this action on May 20, 2011, in Sacramento Superior Court, where they asserted three claims for relief: breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.  Doc. #1, Exhibit A.  On October 14, 2011, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Doc. #1 at pg. 1-3.

On June 6, 2012, Plaintiffs filed their pending Motion for Partial Summary Judgment (Doc. #13).  On June 27, 2012, Defendant filed its Motion for Partial Summary Judgment (Doc. #14) and also filed an Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. #16).  Plaintiffs subsequently filed an Opposition to Defendant's Cross-Motion together with a Reply in support of their Motion for Partial Summary Judgment (Doc. #19).

Plaintiffs and Defendant both seek to have the following issue adjudicated:  Whether Defendant had, under one or more of the liability insurance policies issued to LaGrassa, a duty to defend the June 2009 legal action brought against LaGrassa by RMIC in the Sacramento County Superior Court (RMIC v. LaGrassa, case no. 34-2009-00047925).

1                          III. OPINION

2          A.    Legal Standard

3                 1.    Motion for Summary Judgment

4          Summary judgment is proper "if the pleadings, depositions,

5     answers to interrogatories, and admissions on file, together with

6     affidavits, if any, show that there is no genuine issue of

7     material fact and that the moving party is entitled to judgment

8     as a matter of law."  FED. R. CIV. P. 56(c).  The purpose of

9     summary judgment "is to isolate and dispose of factually

10    unsupported claims or defenses."  Celotex v. Catrett, 477 U.S.

11    317, 323-324 (1986).

12         The moving party bears the initial burden of demonstrating

13    the absence of a genuine issue of material fact for trial.

14    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  If

15    the moving party meets its burden, the burden of production then

16    shifts so that "the non-moving party must set forth, by affidavit

17    or as otherwise provided in Rule 56, 'specific facts showing that

18    there is a genuine issue for trial.'"  T.W. Electrical Services,

19    Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630

20    (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).  The Court must

21    view the facts and draw inferences in the manner most favorable

22    to the non-moving party.  United States v. Diebold, Inc., 369

23    U.S. 654, 655 (1962).  "[M]ere disagreement or bald assertion

24    that a genuine issue of material fact exists will not preclude

25    the grant of summary judgment".  Harper v. Wallingford, 877 F. 2d

26    728, 731 (9th Cir. 1987).

27         The mere existence of a scintilla of evidence in support of

28    the non-moving party's position is insufficient: "There must be

1  evidence on which the jury could reasonably find for [the non-

2  moving party]." Anderson, 477 U.S. at 252.  This Court thus

3  applies to either a defendant's or plaintiff's motion for summary

4  judgment the same standard as for a motion for directed verdict,

5  which is "whether the evidence presents a sufficient disagreement

6  to require submission to a jury or whether it is so one-sided

7  that one party must prevail as a matter of law." Id.

8              2.    Interpretation of Insurance Contracts

9      The "interpretation of insurance contracts raise questions

10 of law and thus are particularly amenable to summary judgment."

11 New Hampshire Ins. Co. v. R.L. Chaides Construction Co., 847 F.

12 Supp. 1452, 1455 (N.D. Cal. 1994).  The general rules of contract

13 interpretation govern judicial interpretation of an insurance

14 policy. See, e.g., Waller v. Truck Ins. Exchange, Inc., 11

15 Cal.4th 1, 18 (1995).  As set forth by the California Supreme

16 Court:

17     The fundamental rules of contract interpretation are
       based on the premise that the interpretation of a
18     contract must give effect to the 'mutual intention' of
       the parties.    'Under statutory rules of contract
19     interpretation, the mutual intention of the parties at
       the   time   the   contract   is   formed   governs
20     interpretation.   Such intent is to be inferred, if
       possible, solely from the written provisions of the
21     contract.   The 'clear and explicit' meaning of these
       provisions, interpreted in their 'ordinary and popular
22     sense,' unless 'used by the parties in a technical
       sense or a special meaning is given to them by usage,
23     controls judicial interpretation.  A policy provision
       will be considered ambiguous when it is capable of two
24     or more constructions, both of which are reasonable.
       But language in a contract must be interpreted as a
25     whole, and in the circumstances of the case, and
       cannot be found to be ambiguous in the abstract.
26

27

28 Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 18 (1995)

1  (quoting CAL. CIV. CODE §§ 1638, 1644; AIU Ins. Co. v. Superior

2  Court, 51 Cal.3d 807, 821-22 (1990)) (internal and other

3  citations omitted).

4      Any ambiguous terms are resolved in the insured's favor,

5  consistent with the insured's reasonable expectations. E.M.M.I.

6  Inc. v. Zurich American Insurance Company, 32 Cal. 4th 465, 470-

7  471 (2004).  Insurance coverage is "interpreted broadly so as to

8  afford the greatest possible protection to the insured, [whereas]

9  exclusionary clauses are interpreted narrowly against the

10 insurer."  MacKinnion v. Track Ins. Exch., 31 Cal. 4th 635, 648

11 (2003).

12              3.   Duty to Defend

13     At the summary judgment stage in a duty to defend case, the

14 party claiming coverage "must prove the existence of a potential

15 for coverage" under the policy terms.  Montrose Chem. Corp. of

16 Cal. v. Superior Ct., 6 Cal.4th 287, 300 (1993).  Thus, claims

17 that may, or have the possibility to, be covered raise the

18 insurer's duty to defend.  Safeco Ins. Co. v. Superior Ct., 140

19 Cal.App.4th 874, 878 n.2 (2006); see also Montrose, 6 Cal.4th at

20 295.  In determining whether the insurer owes a duty to defend,

21 courts compare the allegations of the complaint and extrinsic

22 evidence with the terms of the policy.  Maryland Cas. Co. v.

23 Nat'l Am. Ins. Co. of Cal., 48 Cal.App.4th 1822, 1829 (1996).

24     Once the party claiming coverage shows a potential for

25 coverage, the insurer must conclusively prove with undisputed

26 evidence that no coverage existed under the policy.  Maryland

27 Cas. Co., 48 Cal.App.4th at 1832.  Merely raising a triable issue

28 of material fact will not defeat summary judgment in this

8

1  instance.  Id. at 1831.

2       B.    Cross-Motions for Summary Judgment

3       The issue before the Court is whether Defendant had a duty

4  to defend LaGrassa in the underlying June 2009 state court

5  action.  Plaintiffs argue it is undisputed that the facts

6  presented to Defendant at the time of tender indicated there was

7  a possibility for coverage, and therefore, this Court should find

8  Defendant had a duty to defend LaGrassa in the underlying action

9  as a matter of law.  See Plaintiffs' Motion for Summary Judgment,

10  Points and Authorities, Doc. #13-1 ("Plts' MSJ") at pg. 10-22.

11  Defendant argues, instead, that this Court should find LaGrassa's

12  claim was not covered as a matter of law and, accordingly, enter

13  summary judgment in its favor.  See Defendant's Motion for

14  Summary Judgment, Points and Authorities, Doc. #14-1 ("Def's

15  MSJ") at pg. 1, 5-10; Defendant's Opposition to Plaintiffs'

16  Motion for Summary Judgment ("Def's OPP"), Doc. #16.

17            1.    Potential for Coverage

18       Under the terms of the policy, property damage is covered

19  only if it is caused by an "occurrence," defined as an accident.

20  E.g., Def's MSJ at pg. 5.  The California Supreme Court defines

21  accident, in the insurance liability context, as "'an unexpected,

22  unforeseen, or undesigned happening or consequent from either a

23  known or unknown cause.'"  Delgado v. Interinsurance Exch. Of

24  Automobile Club of So. Cal., 47 Cal.4th 302, 308 (2009) (quoting

25  Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., 51 Cal.2d

26  558, 563-564 (1959)) (other citations omitted).  Importantly,

27  "'[t]his common law construction of the term 'accident' becomes

28  part of the policy and precludes any assertion that the term is

ambiguous.'"  Id. (quoting Collin v. American Empire Ins. Co., 21
Cal.App.4th 787, 810 (1994)) (other citations omitted).  The
parties' first disagreement centers on whether the disposal of
the alarm panel could be considered an accident within the policy
at issue.  The Court must look to "all of the acts, the manner in
which they are done, and the objective accomplished occur[ing] as
intended by the actor," in determining whether or not LaGrassa's
act of disposing of the alarm panel was an accident.  See
Delgado, 47 Cal.4th 302, 311-12 (2009).

    Defendant relies primarily on three California cases,
Delgado, Merced, and Frake, arguing they establish that
LaGrassa's claim was not covered.  See Def's MSJ at pg. 6-8
(citing Delgado, 47 Cal.4th 302 (2009); Merced Mutual Ins. v.
Mendez, 213 Cal.App.3d 41 (1989); State Farm Gen. Ins. v. Frake,
197 Cal.App.4th 568 (2011)).  All three cases involve the
commission of an intentional tort by the insured.  In Delgado,
the defendant insurance company denied coverage for an underlying
lawsuit against their insured for assault and battery.  Delgado,
47 Cal.4th at 306-07.  The same issue presented here was before
the Court in Delgado: was the incident at issue an "accident"
within the meaning of the policy held by the insured, such that
the insurer had a duty to defend its insured in the underlying
action.  Id. at 308.  The insured had argued that the assault and
battery were an accident because he was acting upon his belief,
albeit an erroneous one, that he needed to defend himself.  Id.
The Court rejected this argument, focusing on the close causal
connection between the act and the harm, and found that the
insured's intentional use of force was clearly not an accident.

10

1  Id.  Frake and Merced present almost identical situations.

2       The cases relied on by Defendant are distinguishable from

3  the case at bar because there is not the same type of direct

4  relationship between LaGrassa's act and the harm suffered by

5  RMIC, as there was in the aforementioned cases.  Cf., e.g.,

6  Delgado, 47 Cal.4th 302 (2009).  Indeed, had LaGrassa thrown out

7  the alarm panel knowing that RMIC had begun to actively

8  investigate the source of the Yee fire, this might lead to a

9  different result.  Instead, RMIC waited almost a year and a half

10 after the fire occurred, and more than a year after LaGrassa had

11 disposed of the panel, to request it.  Thus, LaGrassa's

12 destruction of the evidence that RMIC needed could have been

13 accidental and not meant to cause any harm to RMIC under a

14 mistaken belief that the alarm panel was no longer needed.  The

15 injury or damage alleged by RMIC as a result of LaGrassa

16 disposing of the fire alarm was not an expected, foreseen or

17 intended consequence of LaGrassa's act.  Because it is possible

18 that LaGrassa did not mean to cause any harm to RMIC under a

19 mistaken belief that the alarm panel was no longer needed, these

20 facts would give rise to a duty to defend.  See State Farm Fire &

21 Casualty v. Superior Court, 164 Cal.App.4th 317 (2008); Meyer v.

22 Pacific Employers Inc. Co., 233 Cal.App.2d 321 (1995); National

23 American Insurance Co v. Insurance Co. of North America, 3 Cal.3d

24 553 (1970).

25       Even more compelling is Plaintiffs' evidence, known to

26 Defendant at the time of tender, that LaGrassa was potentially

27 authorized to dispose of the alarm panel.  Again, this

28 demonstrates that there was a possibility for coverage, in that

11

1    the harm caused by LaGrassa's disposal of the alarm panel was not

2    expected, foreseeable, or designed.  Cf. State Farm Fire &

3    Casualty, 164 Cal.App.4th 317 (2008).  The cases relied on by

4    Defendant do not foreclose Plaintiffs' claim, which is

5    Defendant's burden at this stage.  See Maryland Cas. Co. v. Nat'l

6    Am. Ins. Co. of Cal., 48 Cal.App.4th 1822, 1832 (1996).

7         Plaintiffs have presented evidence demonstrating that there

8    was a possibility that LaGrassa's claim was a covered accident at

9    the time of tender, and Defendant has not rebutted this evidence

10   by "establish[ing] the absence of any such potential [for

11   coverage."  See Montrose Chemical Corp. v. Superior Court, 6

12   Cal.4th 287 (1993).  In other words, Plaintiffs have demonstrated

13   Defendant had a duty to defend LaGrassa in the underlying lawsuit

14   because LaGrassa's claim was potentially a covered occurrence

15   under his insurance policy with Defendant.

16        The parties' second disagreement centers on whether there

17   was property damage or loss of use of property under the terms of

18   the agreement.  See Plts' OPP at pg. 7-8.  Defendant argues there

19   was no "loss of use" because any permanent loss does not qualify

20   as loss of use in the insurance context.  Def's MSJ at pg. 10.

21   Defendant relies on St. Paul Fire & Marine Ins. Co. v. Vadnais

22   Corp., 2012 WL 761664 (E.D. Cal. Mar. 6, 2012), for the

23   proposition that permanent loss does not equate to loss of use;

24   however, St. Paul does not support this conclusion.  In that

25   case, the Court found that the plaintiff had only pled a claim

26   for relief arising out of property damage, and plaintiff had

27   failed to plead in the Complaint that loss of the property at

28   issue in that case constituted property damage.  2012 WL 761664

1   at *12.   Here, the underlying complaint sufficiently pled that

2   the loss in this case fell within the policy definitions.   RMIC

3   sued LaGrassa because of the loss of the use of the alarm panel

4   itself when he could not return it to RMIC.   This arguably

5   conforms with the policy's definition of property damage.   See,

6   e.g., Plaintiffs' Complaint, Doc. #1 at ¶ 8; Doc. #1, Ex. B ¶¶

7   14-18.   The terms of an insurance policy are to be interpreted

8   broadly in favor of the insured.   MacKinnion v. Track Ins. Exch.,

9   31 Cal. 4th 635, 648 (2003).   Defendant has not directed this

10   Court to any case which convinces this Court that Plaintiffs'

11   claim is foreclosed because it could not, under any

12   circumstances, be considered property damage, which Defendant is

13   required to do at the summary judgment stage.   See Maryland Cas.

14   Co. v. Nat'l Am. Ins. Co. of Cal., 48 Cal.App.4th 1822, 1832

15   (1996).

16        Accordingly, on the potential for coverage issue the Court

17   finds that Plaintiffs have demonstrated there was at least a

18   possibility that LaGrassa's claim in the underlying lawsuit was

19   covered, and Defendant has failed to establish the absence of

20   coverage. In light of this finding, the Court need not address

21   the parties' arguments regarding negligence, or other theories

22   that would bring Plaintiffs' claim within the scope of coverage.

23             2.   Exclusions

24        Defendant argues that even if the Court finds LaGrassa's

25   claim was a covered occurrence, three policy exclusions apply

26   that bar coverage of the claim.   See Def's MSJ at pg. 10.   While

27   the insured has the initial burden of demonstrating a claim falls

28   "within the basic scope of coverage," Collin v. American Empire

1    <u>Ins. Co.</u>, 21 Cal.App.4th 787, 803 (1994), "exclusions are

2    narrowly construed and must be proven by the insurer."  <u>St. Paul</u>,

3    2012 WL 761664 at *12 (citing <u>Collin,</u> 21 Cal.App.4th at 802-03).

4    "[A]ny ambiguity is to be interpreted against the insurer and

5    reasonable doubts as to uncertain language should be resolved

6    against the insurer."  <u>Miller v. Elite Ins. Co.</u>, 100 Cal.App.3d

7    739, 751 (1980) (citing <u>Crane v. State Farm Fire & Cas. Co.</u>, 5

8    Cal.3d 112, 115 (1971)).

9        Plaintiffs argue that Defendant cannot raise the issue of

10   the applicability of the exclusions because they waived it by not

11   raising it at the time of tender.  Plts' OPP at pg. 8-10.  The

12   Court finds that the Defendant has presented evidence and case

13   law that supports its position that it has not waived its right

14   to argue several policy exclusions apply as a bar to coverage.

15   <u>See</u> Defendant's Reply in Support of its Motion for Summary

16   Judgment, Doc. #21 at pg. 3-4 (citing <u>Waller v. Truck Ins. Exch.</u>,

17   11 Cal.4th 1 (1995)).  Accordingly, the Court will address the

18   policy exclusions raised by Defendant.

19                    i.    <u>Personal Property in the Care, Custody, or</u>

20                          <u>Control of the Insured</u>

21       Defendant first argues that the policy's exclusion for

22   damage to "personal property in the care, custody or control of

23   the insured," applies because it is not disputed that the panel

24   was both personal property and in LaGrassa's care, custody or

25   control.  Def's MSJ at pg. 10-11.  Plaintiffs respond that

26   LaGrassa was sued by RMIC not because the alarm panel was damaged

27   while in his care but because he failed to return the panel.

28   Plaintiffs further argue that Defendant's narrow reading of this

1  exclusion produces absurd results and renders the policy

2  illusory.  Plts' OPP at pg. 11-12.

3       While neither party has directed this Court to authority

4  that is on point to provide clarity as to the common

5  interpretation of this exclusion, because this Court must

6  construe the exclusions narrowly, against the insurer, the Court

7  finds that Defendant has not met its burden in establishing that

8  this exclusion applies to foreclose Plaintiffs' claim.  See

9  Miller v. Elite Ins. Co., 100 Cal.App.3d 739 (1980); Maryland

10 Cas. Co. v. Nat'l Am. Ins. Co. of Cal., 48 Cal.App.4th 1822, 1832

11 (1996).

12                    ii.  Damage that is Expected or Intended

13      The policy further excludes coverage for property damage

14 that is "expected or intended from the standpoint of the

15 insured."  As Plaintiffs properly argue, this exclusion requires

16 the Court to make essentially the same finding it did above,

17 regarding whether or not LaGrassa's act was an "accident."  See

18 Plts' OPP at pg. 12.  Defendant does not directly respond to this

19 in its Reply, instead arguing that it is clear the damage was

20 expected and intended.  For the reasons this Court found LaGrassa

21 has demonstrated there was a possibility that his action was an

22 accident, in that the harm was unexpected, unforeseeable, and

23 unintended, the Court finds that Defendant has failed to

24 demonstrate that this exclusion bars Plaintiffs' claim.  Cf.

25 State Farm Fire & Casualty, 164 Cal.App.4th 317 (2008).

26                    iii. Damage arising from Failure to Perform an

27                    Agreement

28      Defendant argues a third policy exclusion, for damage that

                                15

1   arises out of the insured's failure "to perform a contract or

2   agreement in accordance with its terms," bars Plaintiffs' claims.

3   Plaintiffs respond that the underlying lawsuit could be construed

4   not as a breach of contract suit, but arising out of an

5   obligation imposed by law, the breach of which constitutes a

6   tort.  See Cal. Civ. Code § 1427.  Defendant does not respond to

7   this argument in its Reply.  As discussed above, there is a

8   disputed issue of whether LaGrassa was authorized to dispose of

9   the alarm panel, which would call into question whether or not

10  there was a breach of an agreement.  See supra at B. 1.

11  Moreover, as Plaintiffs point out, LaGrassa's alleged breach in

12  the underlying complaint could constitute both a tort and breach

13  of contract.  If construed as a tort, this third policy exclusion

14  would not apply.  Thus, in construing this exclusion narrowly,

15  and holding Defendant to its burden to show the exclusion

16  definitively forecloses any potential claim by Plaintiffs, the

17  Court finds that Defendant has not met its burden in

18  demonstrating Plaintiffs' claim was foreclosed. Cf. State Farm

19  Fire & Casualty, 164 Cal.App.4th 317 (2008).

20

21                        IV.   ORDER

22      For all the foregoing reasons, the Court finds that

23  Plaintiff has demonstrated there was a potential for coverage at

24  the time the underlying lawsuit was tendered to Defendant, and

25  Defendant has not met its burden to conclusively establish an

26  absence of coverage.  Cf., Maryland Cas. Co. v. Nat'l Am. Ins.

27  Co. of Cal., 48 Cal.App.4th 1822, 1832 (1996).  Accordingly,

28  Defendant had a duty to defend the June 2009 legal action brought

1  against LaGrassa by RMIC in the Sacramento County Superior Court

2  known as RMIC v. LaGrassa, case no. 34-2009-00047925.

3  Plaintiffs' Motion for Partial Summary Judgment is GRANTED, and

4  Defendant's Motion for Partial Summary Judgment is DENIED.

5       IT IS SO ORDERED.

6  Dated: November 26, 2012

7                              _____
                               JOHN A. MENDEZ,
8                              UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28